IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AARON L. SAMPSON,<br><br>Plaintiff,<br><br>v.<br><br>KANE IS ABLE, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:17-cv-00947-DN<br><br>District Judge David Nuffer |

Defendant Kane Is Able Inc. ("Kane") filed a motion ("Motion")[1] for summary judgment under Fed. R. Civ. P. 56(a) against Plaintiff Aaron L. Sampson. Because there is no genuine dispute as to any material fact and Kane is entitled to judgment as a matter of law, the Motion is GRANTED.

## UNDISPUTED MATERIAL FACTS

Based on the record and evidence presented, there is no genuine dispute as to any of the following material facts.

In June 2015, Sampson, who is black, began working as a lift truck operator ("LTO") at Kane's Salt Lake City warehouse through a staffing agency.[2] In September, Kane hired him to work fulltime as the "lead" LTO at this facility. As lead LTO, Sampson was responsible for, among other things, training and overseeing other LTOs, ensuring shipments were properly made

---

[1] Defendant Kane Is Able Inc.'s Motion for Summary Judgment ("Motion"), docket no. 23, filed November 9, 2018; *see* Plaintiff Aaron L. Sampson's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition"), docket no. 26, filed November 27, 2018; Defendant Kane Is Able Inc.'s Reply to Its Motion for Summary Judgment, docket no. 27, filed December 11, 2018.

[2] Complaint ¶ 9, docket no. 2, filed August 22, 2017.

elm

and received, and communicating with customers regarding shipments.[3] In November and December, Sampson complained to Kane that he had been subjected to racist comments at work.[4]

On March 23, 2016, Kane issued a written report citing Sampson for "[p]oor performance."[5] The report states:

> [Sampson] is failing to meet performance expectations as the LTO Lead. The LTO Lead position requires an understanding of basic warehouse operations, productivity, and coaching techniques. After extensive training during the past 9 months [Sampson] has yet to pick up on general warehouse processes, such as[:] productivity calculation with each of the MHE [material handling equipment] processes, knowing when to make assignment changes to staff, how to research and address location errors, and how to lead his team.
> On March 22nd [Sampson] failed to put a pallet on a truck load going to Georgia. [Sampson's supervisor] counseled with [Sampson] how to ensure pallets are not missed when loading or prior to loading. The next day on March 23rd [Sampson] failed to put another pallet on a truck load going to Pennsylvania. His performance is unacceptable and needs to be corrected immediately.
> . . . .
> This warning is being issued with the understanding that continuation of this conduct, and/or continue[d] unsatisfactory performance, and/or violation of company policies and procedures will result in further disciplinary action taken up to and including termination.[6]

Although Sampson admits that pallets were missing from truckloads on March 22 and 23,[7] he considered the report to be "discriminant and unjustified."[8] Accordingly, on April 14, he sent an e-mail to Anne Cooper, Kane's senior vice president of human resources, stating that

---

[3] Opposition, *supra* note 1, at 4-6; *see* Lead LTO Job Description-SLC, docket no. 26-5, filed November 27, 2018.

[4] Deposition of Aaron Sampson, at 35:24-37:13, docket no. 23-9, filed November 9, 2018; *see* Complaint, *supra* note 2, ¶¶ 21-22.

[5] Associate Counseling Report, at electronic page ("ep") 18, docket no. 23-2, dated March 23, 2016.

[6] *Id.* at ep 18-19.

[7] *See* Deposition of Aaron Sampson, *supra* note 4, at 152:15-154:24 (admitting that pallets were missing from loads on March 22 and 23).

[8] Associate Counseling Report, *supra* note 5, at ep 19.

"the reasons outlined in the report are a double standard, harassment, discriminate, and unjustified," and "requesting an immediate investigation by the H.R. Department into [his] concerns."[9] After performing an investigation, Cooper found no evidence of harassment or discrimination with respect to the report.[10]

On May 6, Sampson sent another e-mail to Cooper complaining of further "harassment, retaliation and intimidation" and "requesting an immediate investigation into [this] inappropriate behavior."[11] Sampson also brought similar complaints to Cooper's attention on subsequent occasions.[12] Cooper and Alfonso Yslas, Kane's human resources manager, investigated these complaints as well.[13]

On June 7, Sampson filed an intake form with the Utah Antidiscrimination and Labor Division ("UALD") accusing Kane of "harassment, retaliation, intimidation, discrimination and a hostile work environment."[14] The next day, Sampson informed Kane of this filing.[15] On June 11, he informed Kane again.[16]

On June 15, Cooper and Yslas visited Kane's facility in Salt Lake City in connection with their investigation into Sampson's complaints[17]—which they later concluded "to be without

---

[9] E-mail from Sampson, at ep 7, docket no. 23-3, dated April 14, 2016.

[10] Declaration of Anne Cooper ¶¶ 1–6, docket no. 23-3, filed November 9, 2018; *see* Review of Findings, at ep 29-30, docket no. 23-3, dated April 20, 2016.

[11] E-mail from Sampson, at ep 34, docket no. 23-3, dated May 6, 2016.

[12] *See, e.g.*, E-mail from Sampson, docket no. 26-10, filed November 27, 2018; Internal Complaint, docket no. 26-11, filed November 27, 2018; E-mails from Sampson, at ep 50-58, docket no. 23-3, dated June 10-29, 2016.

[13] Declaration of Anne Cooper, *supra* note 10, ¶¶ 7-13.

[14] Intake Questionnaire, docket no. 26-12, stamped June 7, 2016.

[15] Opposition, *supra* note 1, at 13.

[16] E-mail from Sampson, at ep 52, docket no. 23-3, dated June 11, 2016.

[17] *See* Review of Findings, *supra* note 10, at ep 29-31.

merit[,] wholly unsubstantiated and lacking any credible foundation or support."[18] During this visit, it was reported to them that Sampson had searched through other employees' desks without authorization.[19] Specifically, it was reported that Sampson had searched through coworker Diane Chacon's desk in April despite her demand that he stop,[20] and that he had searched through the desk of Don Maxwell, his direct supervisor, while Maxwell was out on May 31.[21] As a result, Cooper and Yslas began investigating these allegations also.[22]

On June 28, Kane issued a written report citing Sampson for "[p]oor performance" and "[p]oor work quality.[23] This report reads:

> [Sampson] made a Receiving error on 6/23/2016 that was reported to us by e-mail from the customer.
> [Sampson] failed to respond to the customer in a timely manner and delayed a response in receiving an [advanced shipping notice] after a customer request by e-mail on 6/24/2016. This failure to respond resulted in a direct phone call from the customer to leadership, in which they inquired about the delay.[24]

Although Sampson admitted making these errors,[25] he considered this report to be a form of "retaliation, harassment and discriminatory treatment."[26] Earlier that same day, he filed a formal charge of discrimination with the UALD and informed Kane of this filing.[27]

---

[18] Memorandum, at ep 46, docket no. 23-3, dated July 29, 2016.

[19] *See* Review of Findings, *supra* note 10, at ep 31-32. This information was previously reported to others at Kane. *See* E-mail from Chacon, at ep 7, dated June 22, 2016; Declaration of Natalja Schonle ¶ 4, docket no. 23-7, filed November 9, 2018.

[20] Declaration of Diane Chacon, docket no. 23-6, filed November 9, 2018.

[21] Declaration of Natalja Schonle, *supra* note 19.

[22] *See* Memorandum, at ep 62-63, docket no. 23-3, dated July 20, 2016.

[23] Associate Counseling Report, at ep 30, docket no. 23-2, dated June 28, 2016.

[24] *Id.*

[25] E-mails from Sampson, at ep 23-25, docket no. 23-2, dated June 23-24, 2016.

[26] Associate Counseling Report, *supra* note 23, at ep 31.

[27] Opposition, *supra* note 1, at 14, 16-17; *see* Charge of Discrimination, docket no. 26-13, filed November 27, 2018.

In connection with Cooper and Yslas's investigation into the allegations of Sampson searching through Chacon's and Maxwell's desk, Kane suspended Sampson with pay for one week on June 30.[28] Because these allegations were ultimately substantiated,[29] Kane then suspended Sampson without pay for one week on July 20, eliminated his designation as "lead" LTO, and reduced his hourly wage from $14.86 to $13.86.[30]

Although Kane had instructed Sampson to report to work on July 28,[31] Sampson did not do so.[32] On July 29, Kane advised Sampson that if he failed again to report for work as scheduled, he "will have terminated [his] employment with" Kane.[33] After again failing to report to work, Kane sent Sampson the following letter on August 1:

> You once again failed to report for work as scheduled today; nor did you call in. In accordance with Company policy and practice – and *despite* . . . prior communications with you in order to avoid such a result, you have, by your own actions (really *inactions*) – voluntarily terminated your employment with [Kane].[34]

According to Sampson, he "did not return to work for Kane" because he felt that "the conditions of [his] employment . . . had become so intolerable that a reasonable person could not and would not . . . continue working for Kane."[35]

---

[28] Deposition of Aaron Sampson, *supra* note 4, at 243:2-244:15; *see* Declaration of Alfonso Yslas, docket no. 23-5, filed November 9, 2018; Complaint, *supra* note 2, ¶ 70.

[29] Memorandum, *supra* note 22, at ep 62-63.

[30] *Id.* at ep 63; *see* Opposition, *supra* note 1, at 6.

[31] Memorandum, *supra* note 22, at ep 63; E-mail from Cooper, at ep 60, docket no. 23-3, dated July 20, 2016.

[32] Memorandum, at ep 65, docket no. 23-3, dated July 29, 2016.

[33] *Id.*

[34] Letter from Cooper, at ep 67, docket no. 23-3, dated August 1, 2016.

[35] Complaint, *supra* note 2, ¶¶ 73, 75.

On August 22, 2017, Sampson commenced this action against Kane, asserting claims for: (1) racially hostile work environment under Title VII,[36] (2) discriminatory termination based on race under Title VII, (3) retaliatory termination under Title VII, (4) discriminatory termination based on race under 42 U.S.C. § 1981, and (5) retaliatory termination under § 1981.[37] His first, second, and fourth claims were recently dismissed at his request.[38] Only his claims for retaliatory termination now remain; these "claims . . . are limited to his termination."[39]

## DISCUSSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40] A dispute is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[41] A fact is "material" if "it is essential to the proper disposition of [a] claim."[42] In ruling on a motion for summary judgment, the evidence and all reasonable inferences are viewed in the light most favorable to the nonmoving party.[43]

Kane seeks summary judgment dismissing Sampson's retaliatory termination claims under Title VII and 42 U.S.C. § 1981. To prove a violation of Title VII or § 1981—the standards are the same—a plaintiff must either present direct evidence of discrimination or adhere to the

---

[36] 42 U.S.C. § 2000e *et seq.*

[37] *See* Complaint, *supra* note 2.

[38] Order Dismissing Certain Claims with Prejudice, docket no. 31, filed June 4, 2019.

[39] Opposition, *supra* note 1, at 28.

[40] FED. R. CIV. P. 56(a).

[41] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[42] *Id.*

[43] *Id.*

burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*.[44] Sampson concedes that "there is an absence of direct evidence" of discrimination,[45] "so his claims proceed under the *McDonnell Douglas* framework, which requires him to first establish a prima facie case of retaliation."[46] "To do so he must prove: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between his protected activity and the adverse employment action."[47]

Sampson cannot establish a prima facie case of retaliation because he cannot prove that he suffered an adverse employment action. Sampson contends that he suffered an adverse employment action when he was constructively discharged as a result of the elimination of his "lead" LTO position, the one-dollar reduction in his hourly wage, and his one-week suspension without pay on July 20, 2016.[48] Sampson cannot prove that he was constructively discharged.

"[C]onstructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign."[49] While "[a] perceived demotion or reassignment to a job with lower status or lower pay may . . . constitute aggravating factors that would justify finding . . . constructive discharge,"[50] the conditions of employment must be "objectively intolerable."[51]

---

[44] *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

[45] Opposition, *supra* note 1, at 28.

[46] *See Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014).

[47] *Id.*

[48] *See* Opposition, *supra* note 1, at 33-34.

[49] *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1318 (10th Cir. 2017) (citations and quotation marks omitted).

[50] *James v. Sears, Roebuck & Co., Inc.*, 21 F.3d 989, 993 (10th Cir. 1994).

[51] *Hiatt*, 858 F.3d at 1318 (citation and internal quotation marks omitted).

That is, "a plaintiff must show he had no other choice but to quit."[52] "If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged."[53]

Although Sampson may have subjectively believed that he had "no other choice but to quit," his "subjective views of the situation are irrelevant.[54] The working conditions he describes do not amount to an objectively intolerable working environment. The facts, when viewed in a light most favorable to Sampson, show that he resigned of his own free will despite Kane's repeated requests that he return. As a result, no reasonable jury could conclude that he was constructively discharged and thereby suffered an adverse employment action.

Because Sampson did not suffer an adverse employment action, he cannot establish the existence of a prima facie case of retaliation, and his retaliatory termination claims must, as a matter of law, be dismissed with prejudice.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that the Motion[55] is GRANTED.

A judgment will be entered dismissing this action with prejudice.

Signed June 14, 2019.

BY THE COURT:

David Nuffer
United States District Judge

---

[52] *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002).

[53] *Jeffries v. Kansas*, 147 F.3d 1220, 1233 (10th Cir. 1998); *see Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1357 (10th Cir. 1997) ("the question . . . is whether Plaintiffs, at the time of their respective resignations, had the opportunity to make a free choice regarding their employment relationship with" their employer).

[54] *Hiatt*, 858 F.3d at 1318 (citation and internal quotation marks omitted).

[55] Docket no. 23, filed November 9, 2018.